# IN THE COURT OF APPEALS OF IOWA

No. 25-1028
Filed September 17, 2025

**IN THE INTEREST OF M.M,**
**Minor Child,**

**K.M., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

A mother appeals the termination of her parental rights to her six-year-old son. **AFFIRMED.**

Rich L. Pazdernik, Jr. of Pazdernik Law Office, PLC, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

David R. Fiester, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

A mother, Krista, challenges the juvenile court order terminating her parental rights to her six-year-old son, M.M.[1]  First, she contends that the State did not offer clear and convincing evidence to support a ground for termination under Iowa Code section 232.116(1) (2025).  Second, she argues that the court should have preserved the parent-child relationship under section 232.116(3)(c) because M.M. is "intensely bonded" to her.  Finally, as a fallback, Krista asks for six more months to reunify with her son.  After reviewing her claims de novo, we find no basis for granting relief.[2]

## I.  Facts and Prior Proceedings

This case opens and closes with Krista's use of methamphetamine.[3]  In February 2024, a state child protection worker investigated an allegation that Krista was using methamphetamine while caring for her then five-year-old son.  The worker could not find Krista, who failed to pick up M.M. from daycare on February 14.  M.M. went home with his maternal grandmother.  Two days later, police arrested Krista on an outstanding warrant; she was hiding in her basement behind a false wall.  The juvenile court signed a temporary removal order on February 20.  M.M. has been out of parental custody since that date.

---

[1] No father was identified in the proceedings.  But the court terminated the rights of any unknown father or anyone claiming to be M.M.'s father.

[2] We review child-welfare cases de novo.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  Under this standard of review, "we examine the whole record, find our own facts, and adjudicate rights anew on issues properly before us."  *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024) (citation omitted).  We also give deference to the juvenile court's factual findings, especially on credibility issues.  *Id.*

[3] Krista lost custody of two other children in 2010.  In that termination order, the juvenile court chronicled her struggles with her mental health, substance use, and general instability.

Charged with interference with official acts and possession of methamphetamine, Krista spent the next two months in the Linn County Jail. A week after her release, the Iowa Department of Health and Human Services set up interactions with M.M. But Krista never progressed beyond supervised visitation. In fact, by summer 2024, department social workers grew concerned by her "level of aggression and threatening behavior." She often failed to cooperate with the department. During one tense exchange, she swore at a social worker and flung her soda cup down the hallway. She also directed derogatory language at her mother in front of M.M.

Despite court orders, Krista failed to attend scheduled drug tests, missing more than twenty dates between April and August 2024. The department suspected that she was still using methamphetamine, seeing signs such as a sunken face and sores, as well as behavioral indicators including "irritability and violent outbursts." In fall 2024, Krista was diagnosed with methamphetamine use disorder, moderate. She admitted using the drug the day before the evaluation. Krista also suffered from depression and anxiety but did not engage in treatment for many months after M.M.'s removal from her custody.

In January 2025, the State petitioned for termination of her parental rights. Only then did Krista explore options for inpatient treatment. In April 2025 she started a dual-diagnosis program at the University of Iowa Hospitals and Clinics. She told the psychiatrist that was seeking treatment because "meth has consumed too much of my life." But she did not complete the program. As a next step, she started treatment at the Heart of Iowa in late May 2025, but the providers discharged her unsuccessfully from that program.

At the June 3 termination hearing, Krista testified that her last use of methamphetamine occurred just a few days earlier, on Memorial Day. In her testimony, Krista did not accept that her drug use endangered M.M. and did not take responsibility for her decisions. She insisted her relapses were not a safety concern because "if my son was in my home I wouldn't do the shit, period."

In its termination order, the juvenile court found "much of her testimony totally lacking in credibility." The court summarized its concerns: "She has not demonstrated the ability to maintain any significant period of sobriety and shows no insight into how her substance use affects her ability to safely parent [M.M.]" The court terminated her rights under Iowa Code section 232.116(1), paragraphs (f) and (g). She appeals that order.

## II. Analysis

In her petition on appeal, Krista first contends that the State did not meet its burden to prove the elements for termination under Iowa Code section 232.116(1)(h).[4] Trouble is, the court based its decision to terminate on paragraphs (f) and (g). Because Krista fails to challenge termination under paragraph (g), she waives any claim of error related to that ground.[5] *See In re K.K.*, No. 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. March 23, 2016).

---

[4] Krista's counsel cites paragraph (h) but paraphrases the first element as referring to a child "three years of age or older" and the third element as removal "for at least the last twelve months," which are the specifications for paragraph (f).

[5] To terminate under Iowa Code section 232.116, paragraph (g), the court must find the following:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has

As her second issue, Krista contends the court should have applied the exception to termination in section 232.116(3)(c). That provision allows the court to forgo termination when the parent offers "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The exception is "permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We weigh the child's potential harm from termination against the harm of the mother's parenting deficiencies. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). The record shows that M.M. enjoys his visits with Krista. But their bond does not outweigh the risk posed to M.M. by his mother's continued methamphetamine use. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children.").

As her final alternative, Krista asks to delay M.M.'s permanency. *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter permanency order under section 232.104); *see also id.* § 232.104(2)(b) (providing permanency option of allowing six more months for the parent to work toward reunification). We don't see that as a viable option. As the district court observed, Krista did not make constructive use of the delays that did occur:

---

entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Due to continuances requested by Krista or her counsel, the permanency hearing was delayed twice for two additional months. Then upon Krista's counsel's request the termination trial was continued for approximately six weeks. During that additional period, no significant progress was made by Krista. Therefore, there is no indication that any additional time would lead to reunification.

On this record, we are also unconvinced that more time would remove the barriers to reunification. Nor would it be in M.M.'s best interests to wait for permanency. *See In re W.T.*, 967 N.W.2d 315, 323–24 (Iowa 2021).

**AFFIRMED.**